May it please the court, my name is Melinda Cantrell, and I represent the defendants who are the appellants in this action. Deputies Vasquez, Farino, Guerrero, Captain Cruz, Sheriff Falk at the time of the incident, the County of Los Angeles, and the Los Angeles County Sheriff's Department. I would like to reserve five minutes for rebuttal. I would like to start off this morning by focusing on defendants argument that the judgment in favor of the plaintiff on the section 1983 claim must be reversed based on instructional error. On appeal, although the plaintiff was a pretrial detainee at the time of the incident, the defendants submitted that the deference instruction must be given, which is given for Kingsley v. Hendrickson. In that decision, the Supreme Court held that a pretrial detainee's excessive force claims brought under the 14th Amendment are analyzed under an objective reasonableness standard, but deference must be given to the policies and practices that are needed in the judgment of the jail officials to maintain order and institutional security within the jails, which is the same deference instruction required under the 8th Amendment for 8th Amendment force claims. Let's assume the instruction should have been given and wasn't. I think even the district judge said in retrospect he wished he had given it, but he also said his own mistake was probably harmless because it was covered by other instructions, particularly the reasonableness instruction. What's wrong with that? Well, let me address that, Your Honor. First of all, even under the 8th Amendment, the reasonableness instruction in and of itself and the factors to determine whether excessive force was used is insufficient in and of itself. The vital and crucial language must be given that the jury must give deference, which is to yield to the jail officials' judgment, in the practices and policies needed to maintain order and institutional security within the jails. But isn't that, in layperson's terms, covered at least to some extent on the excessive force instruction because it talks about that there had to be need to apply force, but they had to consider whether the defendant reasonably perceived the plaintiff to pose a threat and so forth. So it is giving deference to their judgment about whether they reasonably believed they had a problem. So why isn't that sufficient? Because I respectfully, strongly disagree with that. Just because the jury is given factors to determine whether the defendants acted in good faith does not mean... No, no, I'm not talking about the good faith part. I'm talking about the part where it asks the jury to consider how your clients perceived the plaintiff, whether they I would submit that, although that may be viewed as an element of deference, that's part of the force analysis and it's not telling the jury that they have to give deference to the The plaintiff was considered a physically assaultive high-risk inmate. And that was in the record? Yes. So the jury already had that when they made their decision. And I guess my other question about harmlessness is, in view of all the evidence of what happened to the plaintiff here, and the fact that there were punitive damages awarded, I have a hard time seeing how the verdict could have been different, even with that deference instruction. I would like to go ahead and go through and answer all those questions. First, with regard to the punitive damages, the jury could have found oppression, which means that the defendants acted more harsh than necessary. Without the vital deference instruction, the jury would not have known that they needed to defer to the defendant's decision to use flashlight strikes, to use the taser, that in their judgment was needed to maintain order and security within the jail. Now, in several cases, there is a presumption of prejudice with instructional error. And importantly, where a trial court misstates the elements or fails to adequately and correctly advise of the substantive law, in general, the presumption of prejudice cannot be overcome. And that's in Clem and White v. Ford Mortar. And here in Kingsley, the Supreme Court has said that the deference instruction is a vital element to the objective analysis of the reasonableness of force. So without that vital element, there is an incorrect and inadequate statement of law that should not be able to be rebutted. Furthermore, under Norwood v. Vance, the Ninth Circuit specifically held that where the deference instruction is required to be given, the failure to give that instruction, in fact, results in reversible error. So, as Kingsley has mandated that the deference instruction be given for claims of excessive force by pretrial detainees, as in Norwood v. Vance, that amounts to instructional error. And it is the plaintiff's burden to show that it is more likely than not that the outcome would have been the same had not the instructional error occurred. And here, the record shows that immediately subduing an aggressive and volatile inmate who has actually punched a deputy in the face is a measure intended to prevent the situation from getting out of control. Let me ask you about a different issue. I gather that there's a statutory cap of attorney's fees of 150 percent of the judgment. Is that right? Yes, under 42 U.S.C. 1997, ED2. And they make an application for attorney's fees asking for a lot more than that. You don't bring the cap to the judge's attention. Apparently, he was unaware of it, and he got more than $150,000 in fees. Right. Okay. Why didn't you waive? Why shouldn't we deem that waived by virtue of your failure to raise this? Because, Your Honor, respectfully, that is an issue that does not require any factual development of the record below. It's undisputed the plaintiff was a pretrial detainee at the time he filed his complaint, and this Court has discretion to go ahead and hear that. It's a cap that, as a matter of law, limits the prisoner's recovery of attorney's fees to 150 percent of the judgment, which is $435,000 in this case. And we would respectfully submit there's no prejudice to the other side because there's no needed factual development of the record, and it's a legal statute that applies as a matter of law. And if I may return, I would like to point out, Judge Graber, the special verdict form in this case demonstrates that the jury was confused and there was a presumption of error because the jury found that Deputy Vasquez did not commit a battery against the plaintiff. Now, Deputy Vasquez was the deputy who was actually punched in the face by the plaintiff. And in response, he punched the plaintiff two to three times and then kneed him four times while the plaintiff was on the ground. However... What's the significance of that? I don't understand that. That is significant because it shows that under the battery instruction, the jury had to have found that Deputy Vasquez's force was reasonable, and it appears they believed that... Why couldn't they have found that a certain amount of force was reasonable but it became excessive? Because what it appears by the verdict is that they believed that the other two, Farino and Guerrero, that their practices were excessive based on the policy to use a flashlight that was 40 ounces and up to 14 inches in length as a leg strike, which was a policy in the jail that the officers were allowed to use as a defensive weapon to fend off an attack at the time of the incident. And the jury should have been told they must give deference to that flashlight policy. Deputy Guerrero said that he was allowed to use that flashlight as a defensive strike as the plaintiff was a high-risk assaultive inmate. Without the crucial, crucial language that the jury must yield its own opinion as to the practices within the jail that amount to excessive force, the jury improperly just decided the force on its own. If the jury had been instructed you must give deference to these policies regarding the use of Taser, the reuse of flashlight strikes for leg strikes to non-vital areas, in order to subdue this plaintiff who was high-risk of assaulting in the middle of a jail, the jury would have found in favor of all the defendants I would submit to you. I see you're down to about four minutes, and you said you wanted to reserve five. I'll just point out too, real briefly, that the plaintiff argued that even if the plaintiff had punched Deputy Vasquez in the face, the force was unreasonable. I said that coupled with the lack of deference instruction shows instructional error, and the jury was confused that they had to yield their judgment to the judgment of the officers in the amount and the types of methods of force that were used to determine how to subdue this plaintiff. The jury wasn't allowed to just make those decisions on its own. It had to defer. With regard to the evidentiary error, I think that's fully brief, but I think that was a huge problem in this trial as well, the Citizens Commission of Jail Force report and the McCorkle memorandum. I will reserve the rest of my time. Thank you so much. Thank you, Ms. Cantrell. Good morning. Thank you, Your Honor. If it pleases the Court, I would like to reserve five minutes for my co-counsel, Ms. Mercado, who wrote the brief on the attorney's fees. Sure. Just state your name for the record. My name is Samuel Paz. I represent the plaintiffs. Mr. Mark Packowitz, also the trial lawyer, is here. Your Honor, I would address the Court that I think the first issue is that Kingsley, I think, pretty well wipes out the malicious and sadistic. No Ninth Circuit case that I could find has found, affirmed Kingsley or used Kingsley in a case, so I would ask this Court to certainly do that as it relates to malicious and sadistic language, which is all Eighth Amendment. As far as the difference, Your Honor, throughout the trial, the Court asked defense counsel, as we were working on jury instructions, what policy or procedure are you suggesting I should give difference to? They couldn't answer the question because there was no policy or procedure. Their defense was simply, we didn't do it. It was a self-defense. He attacked us. The jury rejected that. They rejected that he was assaulting us. There was a policy on the use of flashlights, right? Yes. And the court did find, and the jury did find, that that was part of the Monell liability for allowing that after their... Well, I mean, doesn't that then say the court should have given the deference instruction to that policy? No, Your Honor. Why not? Because the issue was the use of that kind of a weapon in the jail was warned over five or ten years that they shouldn't be doing this. They shouldn't allow that kind of a flashlight to be used. If they're using it to illuminate, that's one thing. If they're using it as a club, that's not the policy. Captain Cruz testified that, no, we don't use the flashlight as a weapon. That's prohibited. So there was no policy or procedure that the deputies were following in the use of this. The court asked, what policy, what procedure are you suggesting they should give a deference to? And over and over, the defendants had no answer for that question. That's why it wasn't in there. It's certainly within the court's discretion to be able to formulate a policy, a jury instruction that meets the facts of the case. And then the judge said, yeah, but on second thought, I wish I had given it. Yes. He made it only because he thought, well, maybe there was something there. But that was already in the context of the motion for due trial. I would point out, Your Honor, that at Kingsley, at 2473, the court, the defendants have argued essentially that deference is mandatory. That passage in Kingsley explains it. The court cannot apply the objective standard mechanically. It turns on the facts and circumstances of each particular case. Then the court goes on to list nine different factors that can be considered. And what our judge did was the district court simply said, we went through the factors. I took out – he actually used from the jury instruction on Eighth Amendment, he used six of the factors. He eliminated sadistic and malicious, and he eliminated – and that was, by the way, model jury instruction 9-24. And so the court did consider all the factors that were relevant to the case, and that was the reason the court then excused the deference argument because it just wasn't there. It wasn't there for them. He asked, and they didn't – they couldn't give it to him. The first time I even heard this argument is in the reply brief. That's the first time they ever articulated an argument, and their argument is that they could use this weapon as – this flashlight as a weapon. The jury found they didn't believe Mr. Guerrero or Farley that they were attacked. And so that's just not before the court. That's the defense's argument, but I don't believe the court should consider it in terms of the substantial evidence that was presented to the jury. As far as Norwood is concerned, Your Honor, Norwood is not a case involving excessive force. In Norwood, that was simply inmates were denied exercise because there had been a series of jail riots. Guards had been attacked. So the court said – the prison officials over a two-year period said, we're going to limit the exercise for you folks. That was the basis for that. So the court was right in saying, well, wait a minute. We have to give some discretion to the prison officials. We're going to run the prison. It's a hard job, and that's what they have to do. I'm down to my 10 minutes, Your Honor. Am I reading this correctly? It says it's – You've got about 9 minutes and 45 seconds left. Okay. Is there any other matters that the court would like me to address insofar as the brief? I'm interested in the attorney's fees issue. But I gather your colleague is going to take care of that. Very well. Thank you, Your Honor. Thank you, Mr. Paz. Good morning. May it please the Court, I'm Sonia Mercado. I'm appearing on behalf of plaintiff, and now I know how witnesses feel in court. Could you just speak up just a tad? Yes, okay. Great. I'm going to address the issue of waiver of Section 1977 on the attorney fees. I'd like to, if you don't mind, since we're, you know, in the interest of time. Yes. Even a waived issue we might have discretion to deal with because it's a pure issue of law in this case. And I'm interested in your reading of the statute, assuming we reach the merits of it. In your view, does it actually cap the fees at 150% of the judgment, or does it simply provide a different mechanism for payment of fees if they are in excess of 150%? Your Honor, I think that it's hard to answer the Court's question because there's very little law on the issue of fees. I strain to find it. I do think that the Court ---- I'm just looking at the text of the statute. Do you have it in front of you? I do not, but I can quickly turn to that. And I may have the wrong version of it in front of me, which is always a possibility too, since I keep changing these things. Your Honor, while I look for the statute, I believe it's in Defendant's brief. I mean, I guess ---- I found it. Okay. I think that the status of the statute is that it may cap, absent other circumstances. I think that in this case, one of the major issues that I notice in Defendant's reply is that Defendants do not deny the following, which is really the critical issue in this case and should have been highlighted a little bit better. And that is that the final pretrial conference order pursuant to Rule 16E is what was controlling in the action. If you look at document 7ER1915, that is the Court's final pretrial conference order on the issue of attorney fees. The only issues Defendants raised in the final pretrial conference order was the issue that they wanted an order for attorney fees and costs for themselves. Let me ask you this. If they had properly raised this statute, brought this to, was it Judge Kronstadt? Yes, sir. Brought it to his attention. Is there anything you could have said that would have gotten you out of the 150 percent cap? Yes. What? I would have said the following. The pretrial conference order is controlling, and once it's entered by the judge, it extinguishes all of the issues. The pretrial order can override the statute? Yes, because just like a Monell claim, a plaintiff may assert a Monell claim, but as we saw in the case of Hunt v. Orange County, once a plaintiff waives any claim they may have, I may have had asserted 13 causes of action, and then at the final pretrial status conference, we know that the purpose is to narrow the issues and to extinguish issues the parties do not wish to litigate any further. Let's say we were to hold that even if you had brought the pretrial statement to the judge's attention, that's not a legal basis to overrule the limit that Congress has seen fit to put on attorney's fees in this case. Let's assume that's the view we take of it. Is there anything else you've got? Yes. Had defendants filed a motion to modify the pretrial conference order after it was entered, and after they ---- You're putting all your eggs in the pretrial statement. Well, I'm putting most of my eggs in the pretrial statement. What's the last egg? I still am interested in what you think the statute means, because I find it not obvious. The statute. I'm not interested in the pretrial order at this moment. Go back to the statute. Yes. I think that what the statute intended, Your Honor, was to limit fees in those cases in which cases were brought that were not meritorious. Well, but I think Judge Graber's question is exactly how does the statute operate. It looks to me ---- let me just ---- I'm not trying to hide the ball. It looks to me as if there is a cap on the hourly rate only, and that everything else has to do with a reasonable fee in light of all the things that are described in subsection 1 about proportionality, and it was required work to get the result, and it was ---- there was a violation of the plaintiff's rights. So I guess I would ---- it's very interesting, because neither side has read this statute in a way that to me tracks the text of it. Well, Ms. Mercado, if you take it step by step, right, under D-2, no, D-1. D-3 is the place to start. Well, you start with 2, because whenever monetary judgment is awarded in certain cases, then a portion not to exceed 25 percent shall be applied to your attorney's fees, all right? So 25 percent of the award goes to attorney's fees, all right? Isn't that what that sentence says? It seems to say that, Your Honor. All right. Well, you must have a position on it. You've studied this for probably many months, right? I assume that's what the sentence says. And then the next sentence says, if the award of fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant. Well, here the award of fees is greater than 150 percent of judgment, isn't it? Yes. So the excess is paid by somebody else, apparently. So it must seem to relieve the defendant from paying the excess. Is that what it says? That's what it looks like. Well, I think the statute is ambiguous. So who pays it, I guess? Does anybody pay it? You're right. My interpretation of this was that the first 25 percent is paid by the plaintiff, like a regular contingency fee, and anything over that, up to 150 percent, the defendant pays, and that's the maximum he's exposed to. Right. I don't, Your Honor, I think that. In any event, you can't get a million dollars here if you follow this statute, attorney's fees. Well, and then there's subparagraph 3. Right. Which says, right, no award of fees shall be based on a rate greater than 150 percent of the rate established in the CJA. CJA is what? What's the CJA fee now? I have no idea. It's for attorneys who are. What is the rate, the number? It doesn't actually have a real rate. I think it's. It has a rate. That's how CJA attorneys get paid. They get paid the CJA. It's something like. The rate is. It's less than 200, right? So you get. So let's assume it's 200. So the most you can get is 150 percent of that, right? $300 an hour. So you can't get more than $300 an hour, we'll say. 150 percent of the CJA rate. Now, this award is based on rates much greater than 150 percent of the CJA rate, isn't it? Of the CJA rate, correct. So unless this provision is waived, that sets a limit on the amount of attorney fees separate from subparagraph 2, doesn't it? The statute does limit attorney fees, Your Honor. And the defendants waived Section 1977 and only asked in the pretrial order that their fees be paid. They waived it. They never moved to modify the pretrial conference over. So let's start with the proposition that they waived it. The defendants are saying, I think this is their case, because it's a pure question of law. There's no reason not to decide the question in spite of their waiver. Now, what's wrong with that argument? Well, what's wrong with it is that if it were a true issue of law, which it's not, because certain factual issues would go in, for example, well, if they were to move to now request of this Court to grant them their fees, they would have to show how they haven't been prejudiced by that. But what the Court did was Step 1, which is found in Subsection 1, D1, which says find a reasonable fee. That's what the Court did here. It did Step 1 already, the district court. They're not even arguing that that was done wrong. So they're saying as a given the fees that the district court awarded would otherwise be reasonable if this weren't a prisoner case. But by law, you can't get that much under Parts 2 and 3. Actually, they only argue Part 2. So they probably waived, waived, re-waived Part 3. But I guess I don't see the problem. Well, I think that the issue is that they, that in waiving the statute, Your Honor, they actually force plaintiffs to take particular positions during the litigation of the case. Had they raised those issues as they should have in their charge. So you wouldn't have litigated the case hard if you knew that you would get fewer fees? Is that your argument? No. My argument is the Court and plaintiffs may have made different decisions throughout the trial in this case as to how they would present the case and what they would do. What I'm saying is that in waiving this, there are issues the Court can consider in determining whether the Court can modify their request now and allow them leave to come in and say, oops, appellate counsel recognized an issue that the trial lawyers very deliberately waived in their pre-trial conference order and waived every minute after that, including when they filed the brief in this case. You're making a prejudice argument that you were prejudiced by the defendants not raising this earlier. Tell us, give us one example exactly of what that prejudice was. Well, we would have had the right to decide how we would have litigated the case. I know that. What decision would you have made that would be different? Well, Your Honor, for example, we had experts that came from out of state. Right. We had, we litigated many different issues in the case. We took to task. What would you have done differently? We would have reconsidered how we presented the case at trial, how we litigated the case, how we expended our time. And after you reconsidered it, how would your decision have been different? I don't know what the court means. We made tactical decisions in the case. What I mean is, what was the prejudice of not raising it earlier? You have to, you know, not you have to, but I'd like you to show me a concrete example of how you were prejudiced by it not being raised earlier. Well, we were prejudiced by all of the decisions we made in trial. Like what? Name me one decision that you made that would have been different. Well, Your Honor, maybe we would have used only a Maybe. What would you have done differently? We would have possibly used an Not possibly. What would you have done differently? Used only a use of force expert as opposed to bringing in any other experts in the case for one. That would have saved a lot of time. That would have saved a lot of energy. It would have prevented the court And it might have resulted in a different verdict, huh? Well, with the evidence that we had gathered, I think it may not have resulted in a different verdict. Your Honor, this was a So what are you saying? You over-presented the case? No, I'm not saying I over-presented. I'm saying that I acted diligently and that in the interest of thinking that we were going to have to be more cautious about what we presented at trial, we would have made different tactical decisions, different litigation decisions. The judge, Your Honor, may have made different decisions in even how he ordered the process of the pretrial conference. Well, the different decision he says he would have made was he would have given the deference instruction. That's what he said. Let's see. Are there any other questions? Respectfully, we submit that the matter was waived and defendants have not proven that they are prejudiced. Thank you. In their waiver. Okay. Ms. Cantrell, you have about three minutes left. Yes, sir. With regard to the wording of 42 U.S.C. 1987ED2, I agree that it is oddly worded, but I think it shows that after the 25% is taken from the plaintiff's award, the defense pays up to 150% of the award, and that's the cap. And I cited the case law consistently interprets the statute in that matter. Woods v. Cary from the Ninth Circuit, 722F3D1177. Also, Shepard v. Gord and Coop v. Hopkins. It says plainly attorneys' fees are capped at 150% of the judgment, and those cases are cited in the briefs, but I just wanted to point that out to you. And I wanted to focus, going back to the instructional error. In Kingsley, the Supreme Court states twice that the deference instruction must be given in a pretrial detainee's excessive force claim, and the jury must be told, they say the court, the judge or jury, the Supreme Court specifically says, the judge or jury must be told that they need to give deference to those practices and procedures that the jail officials decide are necessary in their judgment. And I would submit Mr. Paz's argument proves the point. He's saying that the Monell claim and the jury found the flashlight policy was improper and resulted in a deprivation of the plaintiff's constitutional rights. However, if the jury had been properly instructed that they need to defer to the jail official's judgment as well as Deputy Guerrero's decision to use the flashlight for those leg strikes, the outcome would have been different. And it's crazy hypothetical, okay? Suppose they have a practice or whatever officer sees an inmate mouthing off to him. I'm sorry. Suppose you have a case where a guard hears an inmate being disrespectful mouthing off to the guard, and he then replies by burning him with a cigarette. Okay, you got my hypothetical in mind? Okay. Do you think a jury would have to be told that we would have to defer, a jury has to defer to the judgment of the jail on how to handle such matters? Well, I don't think the jury would think the burning of a cigarette was appropriate. That's not my question. Right, I understand. I'm sorry. I would think that in all excessive force cases, the instruction must be given as needed. Just like in the Eighth Amendment, Ninth Circuit Monell jury instruction, the deference instruction is required to be given on top of the factors. Do you think in my hypothetical it could be harmless? In that hypothetical, perhaps it could be harmless. However, in this case, we don't have burning with a cigarette. We have following the policy and using the flashlight. And what injuries did the plaintiff sustain in this case? I'm sorry. What injuries did the plaintiff sustain in this case? He had a fractured ankle, and he had facial injuries as well. Broken nose too? Yes. And so here, and that's where the situational use of force is important because the deputies were allowed to punch him in the face because he was a high-risk assaultive inmate. They were allowed to use leg strikes. They were allowed to use the taser. So in this case, it was all those factors show why the deference instruction in this case was extremely important, and the jury did not understand how to apply those force decisions by the defendants in analyzing the reasonableness of force. And this case is actually quite similar to Kingsley, which also involved a pretrial detainee's claims against two individual officers for slamming his head on a concrete bunk and using a taser. And this is where the Supreme Court, based on those facts, says this deference instruction must be given. Thank you. Nord v. Vance says where there's a deference instruction needed and it's not given, reversible error against the plaintiff's burden to rebut that prejudice, which I don't think was done in this case. You're out of time. Thank you, Ms. Cantrell. Thank you so much. Thank you.
judges: Tashima, Silverman, Graber